CITY OF FRESNO *v.* CALIFORNIA ET AL.

No. 51. Argued January 7, 1963.—Decided April 15, 1963.

628

*Claude L. Rowe* argued the cause for petitioner. With him on the briefs was *John H. Lauten.*

*Solicitor General Cox* argued the cause for the United States et al., respondents. With him on the brief were *J. William Doolittle, William H. Veeder* and *Roger P. Marquis.*

*Denver C. Peckinpah, Adolph Moskovitz, James K. Abercrombie, Irl Davis Brett* and *J. O. Reavis* filed a brief for the Delano-Earlimart Irrigation District et al., respondents.

MR. JUSTICE CLARK delivered the opinion of the Court.

This case arises out of No. 31, *Dugan v. Rank,* decided today, *ante,* p. 609. As set out in our opinion in that case the original suit was instituted against certain local United States Reclamation Bureau officials and several Irrigation and Utility Districts by a number of claimants to water rights along the San Joaquin River below Friant Dam. Subsequently the United States, over its protest, was made a party and the petitioner here, the City of Fresno, intervened as a party plaintiff. Fresno sought, in addition to the injunctive relief requested by the other parties, a declaration as to (1) its water rights as an overlying owner, *i. e.,* rights to underground water fed by the river; (2) its statutory priority, under California law, to the use of water for municipal or domestic purposes, Calif. Water Code, § 1460; (3) its prior right, under the California County of Origin and Watershed Acts, because of its location, Calif. Water Code, §§ 11460, 11463; and (4) its

entitlement to project water from the United States at the same rate charged for water delivered for irrigation purposes. In the District Court Fresno prevailed on all points. In the Court of Appeals this judgment was set aside "insofar as it relates to the terms upon which the City of Fresno is entitled to receive water from the United States at Friant Dam," 293 F. 2d 340, 360, because in establishing the rate at which water would be delivered the respondent officials were acting "within the scope of their statutory authority and were carrying out the duties imposed upon them by their official positions. . . . The complaint of Fresno in this regard is a complaint against the United States and this dispute may not be entertained judicially without a waiver of sovereign immunity on the part of the United States." *Id.*, at 352. With regard to the claim that it enjoyed water rights superior to those of the United States, the Court of Appeals refused to decide, saying on rehearing that "If and when such rights have been established in accordance with state law, Fresno may be able effectively to protest the impounding of waters by these defendants in contravention of such rights." *Id.*, at 360.

Our opinion in *Dugan* v. *Rank, supra,* controls the decision in this case. There we decided that the suit against the United States must fail for lack of consent; that the relief against the Reclamation Bureau officials must also fail as being in truth against the United States; that the United States had seized, in whole or in part, the water rights asserted by the claimants; and that their recourse was through a Tucker Act suit. 28 U. S. C. § 1346. The same is true here.

We agree entirely with the disposition of the Court of Appeals. Petitioner seems to say that § 8 of the Reclamation Act of 1902, 32 Stat. 390, 43 U. S. C. § 383, requires compliance with California statutes relating to preferential rights of counties and watersheds of origin and to the

priority of domestic over irrigation uses. However, § 8 does not mean that state law may operate to prevent the United States from exercising the power of eminent domain to acquire the water rights of others. This was settled in *Ivanhoe Irrigation District* v. *McCracken*, 357 U. S. 275 (1958). Rather, the effect of § 8 in such a case is to leave to state law the definition of the property interests, if any, for which compensation must be made.

We also note that the County of Origin and Watershed Acts, upon which the city relies, do not grant the preference claimed. Under these statutes the area of preference is ". . . a watershed or area wherein water originates, or an area immediately adjacent thereto which can conveniently be supplied with water therefrom . . . ." Calif. Water Code, § 11460. The area of service from Friant Dam would include Kern and Tulare Counties as well as Fresno and Madera. (See map in 142 F. Supp., at 40.) The preference under the Acts is not limited to that area closest to the stream, but extends beyond the watershed and to areas adjacent thereto which can "conveniently be supplied with water therefrom," which from the map would seem to include the Friant-Kern as well as the Madera Canal areas. Likewise, the claim as to the preference of water devoted to domestic uses is unfounded. Section 9 (c) of the Reclamation Project Act of 1939, 53 Stat. 1194, as amended, 43 U. S. C. 485h (c), provides: "No contract relating to municipal water supply or miscellaneous purposes . . . shall be made unless, in the judgment of the Secretary [of the Interior], it will not impair the efficiency of the project for irrigation purposes." In *United States* v. *Gerlach Live Stock Co.*, 339 U. S. 725 (1950), we were concerned with an issue regarding the nature of the Friant Dam unit of the Project and, contrary to petitioner's contention, concluded "that Congress realistically elected to treat it as a reclamation project." *Id.*, at 739. It therefore appears clear that

Fresno has no preferential rights to contract for project water, but may receive it only if, in the Secretary's judgment, irrigation will not be adversely affected.

As to the rates charged for municipal water, this same § 9 (c), *supra,* delegates authority and discretion to the Secretary of the Interior to fix rates covering irrigation as well as municipal water service. It provides that the yardstick for determining rates shall be such "as in the Secretary's judgment will produce revenues at least sufficient to cover an appropriate share of the annual operation and maintenance cost and an appropriate share of such fixed charges as the Secretary deems proper . . . ." The Secretary exercised this discretion and so notified the Congress as to the basis for his determination of the appropriate charge for municipal water. Allocation of Costs and Feasibility Report of February 24, 1947, H. R. Doc. No. 146, 80th Cong., 1st Sess. 19; 1 Engle, Central Valley Project Doc. (1956), H. R. Doc. No. 416, 84th Cong., 2d Sess. 574, 594–596. This report estimated a rate of $10 per acre-foot for municipal water and about $3 per acre-foot or less for irrigation water. *Id.,* at 594–596. The latter rate was based on farm benefits as well as the ability of the user to pay over a protracted period. It was estimated that this rate would return during the repayment period only about one-fourth of the project capital cost allocated to irrigation. *Id.,* at 576–577, 597. As to municipal rates, the return during the same period was estimated at over three times the project capital cost allocated to the delivery of municipal water.* This surplus, together with that from project electric energy, would be used to pay project costs allocated to irrigation but which were beyond the ability of the irrigators to pay.

---

*The payments for irrigation water amounted to $58,545,475, while project capital cost allocated to irrigation was $221,551,600. Municipal water rates would return $29,667,932, while project capital cost allocated to municipal water supply was $9,091,800.

Congress has been kept advised as to the manner in which these rate schedules are operating. 2 Engle, Central Valley Project Doc. (1957), H. R. Doc. No. 246, 85th Cong., 1st Sess. 79–84, 261–262.

In accordance with the Secretary's estimates, long-term contracts for Friant Dam water provide for a rate of $3.50 per acre-foot for Class 1 water and $1.50 for Class 2, while contracts for municipal water supply call for $10 per acre-foot. It appears amply clear that the Reclamation Bureau officials were acting entirely within the scope of their authority in operating the Project in this manner and fixing the rates for water in accordance with congressional mandate, all of which has specifically received our approval in *Ivanhoe Irrigation District* v. *McCracken, supra,* at 295.

The judgment, insofar as it relates to this petition of the City of Fresno, is affirmed and the case remanded to the Court of Appeals with directions to vacate the judgment of the District Court and remand the case with instructions to dismiss the same.

*It is so ordered.*

THE CHIEF JUSTICE took no part in the consideration or decision of this case.