**UNITED STATES of America, Plaintiff,**

and

**Pyramid Lake Paiute Tribe of Indians, Plaintiffs-Intervenors,**

v.

**TRUCKEE–CARSON IRRIGATION DISTRICT et al., Defendants.**

**Civ. No. R–2987–JBA.**

United States District Court,
D. Nevada.

Feb. 5, 1975.

Douglas N. King, Michael R. Thorp, Attys., U. S. Dept. of Justice, Land and Natural Resources Div., Washington, D. C., for United States of America.

Robert S. Pelcyger, Native American Rights Fund, Boulder, Colo., Robert D. Stitser, Ltd., Reno, Nev., for Pyramid Lake Paiute Tribe of Indians.

Frederick G. Girard, Kronick, Moskovitz, Tiedemann & Girard, Sacramento, Cal., James W. Johnson, Jr., Reno, Nev., E. J. Skeen, Skeen & Skeen, Salt Lake City, Utah, for Truckee-Carson Irrigation Dist.

Richard M. Edelman, Reno, Nev., for Washoe County, Nevada.

John N. Schroeder, Reno, Nev., for City of Reno.

Edward C. Reed, Jr., Reno, Nev., for State of Nevada.

Paul W. Freitag, City Atty., Sparks, Nev., for City of Sparks, Nevada.

Richard W. Blakey, Reno, Nev., for Sierra Pacific Power Co.

Leslie B. Gray, Reno, Nev., and numerous other counsel, for Individual defendants.

J. BLAINE ANDERSON, District Judge, Sitting by Designation.

At the hearing on all pending motions held on October 8, 1974, the Court directed that counsel for the respective parties should meet and attempt to agree on procedures and related matters regarding the progress of this action, with particular attention to be given to the need for and scope of a bifurcated trial under Rule 42(b) F.R.C.P. on the defense of res judicata or collateral estoppel and related defenses and briefing of the class action issue which was raised at the hearing.*

Following the hearing counsel met and on October 23, 1974, the Court entered an Order which provided for the submission of briefs on the class action issue and the bifurcated trial issue and providing for further oral argument on the question of the scope of a separate or bifurcated trial, and for further oral argument on the motion to dismiss the State of Nevada in its parens patriae capacity. This memorandum and the accompanying Order address themselves to the bifurcation and class action issues and depart somewhat from the Court's October 23, 1974, Order in that it seems unnecessary to hear further oral argument on the question of the scope of the initial separate trial.

## BIFURCATED TRIAL

■ The varied positions of the parties on the need for and scope of an initial bifurcated trial under Rule 42(b) F.R.C.P. will not be repeated here. The Court has reviewed the arguments and is still of the opinion that a separate trial on the affirmative defenses of res judicata and collateral estoppel would be the most convenient and expeditious means of disposing of those questions. At the same time, however, it would be highly improper to determine to-

---

\* Several counsel have requested the belated publication of this Memorandum Decision. The form and content remain the same. However, it has been edited in slight degree to eliminate some grammatical errors and the citations to supporting authority have been amplified.

day what evidentiary matters are or are not relevant or material in the proof or disproof of those defenses. These questions must naturally be taken up at the separate trial.

■ The scope of the separate trial therefore becomes self-evident. Counsel for the respective parties, no doubt, know that each element of the res judicata and/or the collateral estoppel defenses must be affirmatively proved and that the defendants carry the initial burden.

The Court rejects the position taken by the United States and the Tribe that an initial separate trial should also include a determination of the validity or merits of the claims to water rights which they assert. The validity or merit of a cause of action need not be known if the question is whether the cause of action is barred by the principles of res judicata or a party is collaterally estopped from asserting matters in proof of its validity. The Court does agree that in order to consider the applicability of the principles of res judicata or collateral estoppel, the nature of the cause of action must be known. However, this can be determined from the complaint and through discovery so that a sufficient record is made to determine if the principles of res judicata and collateral estoppel apply.

Accordingly, the Court is of the opinion that following a wave of discovery, this matter could stand submitted after a one-week trial followed by the submission of post trial briefs. However, the Court's estimate of time, like counsel's, is not always accurate.[1]

Discovery should commence forthwith. Presumably, there would be discovery motions which would require the Court's attention. These matters can be taken up at Boise, Idaho, on very short notice between the parties involved if oral argument is necessary. In this regard, the parties are requested to comply fully with the time requirement under the federal discovery rules and if motions are required, to submit briefs on the pertinent issues for the convenience of the Court and the other parties.

Further oral argument on the motion to dismiss the State of Nevada in its parens patriae capacity can be heard immediately preceding or following the separate trial. However, it should be pointed out that the Court has received briefs on the motion. Therefore, if counsel for the interested parties do not wish to make further oral argument on the motion or wish the matter to stand submitted on the briefs already received or following additional briefs, they should so advise the Court by written stipulation.

## CLASS ACTION

The State of Nevada and Sierra Pacific Power Co. moved to dismiss this action for failure by the United States to join as parties defendant two groups of water users: Certain named "Truckee River Permittees" and the holders of water right certificates or other contracts for water between the landowner and the United States or the Truckee-Carson Irrigation District (TCID), on the Newlands Reclamation Project. The United States did not oppose joinder of these two groups and moved to amend its complaint to join as defendants the individual "Truckee River Permittees" and to join as a class under Rule 23(a) and (b)(1) F.R. C.P. those individuals who are holders of water right certificates on the Newlands Reclamation Project and who are members of TCID, naming as representatives TCID and seven water right certificate holders who are members of the class. The motion to amend thus mooted the motion to dismiss and this Court so ruled. However, it became apparent at the October 8th hearing that certain existing defendants opposed joinder of the Newlands Project certificate holders as a class, rather than individually. The Court therefore called for briefs on the

1. This Order was entered on February 5, 1975. The bifurcated trial began November 17, 1975.
   "If a man begin with certainties, he shall end in doubts, but if he will be content to begin with doubts, he shall end in certainties." Bacon, *Advancement of Learning*, Bk. 1

The Court's doubts, as expressed in this decision, reached the level of certainty when the bifurcated trial ended after 43 trial days.

issue and has been given the benefit of the thoughts of the State of Nevada, TCID and the United States.

The State of Nevada and TCID have raised numerous points in opposition to joinder of the certificate holders on the Newlands Project as a class. Many are disposed of by a discussion of the prerequisites to a finding of proper joinder of a class. However, one point raised by TCID warrants some discussion.

## I.

TCID contends that each certificate holder or member of the class has a vested, appropriative water right appurtenant to the land described in each certificate. *See, Ickes v. Fox*, 300 U.S. 82, 94–95, 57 S.Ct. 412, 416–417, 81 L.Ed. 525, 530–31 (1937) and *Nebraska v. Wyoming*, 325 U.S. 589, 611–16, 65 S.Ct. 1332, 1347–1350, 89 L.Ed. 1815, 1828–1830 (1945), *decree modified*, 345 U.S. 981, 73 S.Ct. 1041, 97 L.Ed.2d 1394 (1953). It contends that by their nature appropriative rights are not amenable to class litigation. The United States argues that regardless of the legal nature of the certificate holders' rights, their rights for the purposes of this action are identical and fixed *inter se*. Therefore, treatment of the certificate holders as a class is permissible.

Generally, where appropriative water rights are involved in a general stream adjudication, each individual appropriator must be brought before the court. *See, State of California v. Rank*, 293 F.2d 340 (9th Cir. 1961) (*aff'g* in part, *rev'g* in part *Rank v. (Krug) United States*, 142 F.Supp. 1 (S.D.Cal.1956)), *modified*, 307 F.2d 96 (9th Cir. 1962), *aff'd* in part, *rev'd* in part, *Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) and *City of*

*Fresno v. State of California*, 372 U.S. 627, 83 S.Ct. 996, 10 L.Ed.2d 28 (1963); *Miller v. Jennings*, 243 F.2d 157 (5th Cir. 1957), *cert. denied*, 355 U.S. 827, 78 S.Ct. 39, 2 L.Ed.2d 41 (1957); *People of the State of California v. United States*, 235 F.2d 647 (9th Cir. 1956). However, these cases are distinguishable from the circumstances presented here. All parties to this case concede this is not a general stream adjudication and not a fight among all appropriators on the stream to establish their rights. Much of what is said in the foregoing cases concerning class actions to adjudicate water rights is, therefore, upon careful reading, supportive of the efforts of the United States to join the certificate holders as a class.

In *Rank*, the Court of Appeals was concerned with whether the United States had been properly joined as a defendant under the McCarran Amendment, 43 U.S.C. § 666, as it could only be joined as a defendant if the litigation could be classified as a general stream adjudication. Because the action had been brought as a class action, not all claimants in the stream were parties and the District Court had not decreed rights as between the individual claimants. Therefore, the Court held that since the action was not a general stream adjudication, the United States could not be joined as a defendant.[2] It is important to note that the Court did not dismiss the action saying that it could not be brought as a class action.

The District Court in *Rank* concluded from facts very similar to those presented here that the action could proceed as a class action. In *Rank v. (Krug) United States, supra*, the court stated:

"Although it has been stated many times, it is again necessary to repeat, that this suit is not a case where the water users, either riparian or overlying, are seeking

2. This was also the holding in *Miller v. Jennings, supra*. The action there was an attempted general stream adjudication by use of the class action device. The Court disagreed, holding that the suit was not a suit to establish all rights on the river because not all claimants were before the Court and therefore the action had to be dismissed as the United States was an indispensable party and had not consented to be sued. In *People of the State of California*

*v. United States, supra*, the Court condemned a partial declaratory judgment, ostensibly only declaring rights between the United States and two claimants, but which in effect bound all of the other claimants who were parties in the case without giving them an opportunity to be heard. The Court stated that the only proper way to adjudicate rights was to have all the claimants before the Court, which had not been done.

to enforce any separate or several rights among themselves or against one another, or to have a given amount of water declared and adjudicated to be the right for use on a specified tract of land. The Complaint was predicated, the Pre-trial Order formed, and the case tried, upon the basis that the character of the right sought to be enforced is a common right to water from a common source of supply, namely, the San Joaquin river, and that there was but one act of taking that common source of supply, viz: the impoundment and diversion of the water back of Friant dam. 142 F.Supp. at 155. "Where, as here, there is a common source of supply to the owners of all rights, and that common source is invaded or threatened, there is no reason in law or logic why any one or another nature of right cannot stand in judgment for all others, whether riparian, overlying, appropriative, or prescriptive, in a class action to protect that source of supply which is common to all of them. As to the common source and the common act of invasion of that source, their interests are identical-although as between themselves they may be different in amount, or different in quality, i. e., prescriptive, appropriative, or the like." 142 F.Supp. at 158–159.

In this action all of the certificate holders derive their rights from a common source of supply; the diversion by the United States of a quantity of water for use on the New-

lands Project. *See, United States v. Orr Water Ditch Co.*, et al., In Equity, Docket No. A3, Final Decree dated September 8, 1944, at pgs. 10–11. The United States and the Tribe seek to diminish that source of supply which would in turn diminish the water rights of all members of the class. As against the efforts of the United States and the Tribe to reduce that common source of supply, the interests of each member of the class are identical in both fact and law.

Nor has it been shown that any certificate holder could or would be in a position to establish in himself a superior right to water from that common source of supply as against any other certificate holder. Each certificate holder's right is fixed under the terms of his contract with TCID.[3] Under the terms and conditions of the contracts, if the United States and the Tribe were successful, it appears each certificate holder would be affected equally by a proportionate quantitative reduction of their water rights. This is not true of the other individual defendants already joined. Each individual defendant has a water right with a priority date which could be applied to defeat another's right which is junior. Thus, the rights of each certificate holder, even though characterized as appropriative, are identical with the rights of the other certificate holders as against the United States and the Tribe and those rights are fixed *inter se*. Reason and logic render their rights appropriate to class adjudica-

---

**3.** TCID has exhibited five differing types of contracts which have been used to establish water rights on the Newlands Project over the 60-year period since its construction. Two of the forms, Exhibits A & B, provide for an exchange of a vested water right by the landowner in return for the right to use project water. These forms are contracts between the United States and the landowner and provide for a definite amount of water stated in acre feet which the landowner is allowed to divert from the Carson River. Exhibit C is the form of contract which has by and large been used for obtaining water rights on the Newlands Project. It is a form between TCID and the landowner and gives the landowner a water right in that amount which may be beneficially applied in accordance with good usage in the irrigation of the land, provided that in times of

shortage, the amount of water to be furnished will be a proportionate share of the water available. The other two forms, Exhibits D & E, appear to be predecessors of Exhibit C and are between the landowner and the Newlands Project Engineer. They are substantially the same as Exhibit C and were probably used until TCID was formed.

There is no indication of what effect, if any, the different types of contracts would have on any rights between the certificate holders themselves. It is doubtful that any one type of contract or certificate could be a basis for establishing a superior right to Newlands Project water as against other members of the class. Nor is it indicated how many members of the proposed class, if any, claim rights under an agreement other than Exhibit C.

tion if the prerequisites under Rule 23 are satisfied.

## II.

Before there can be a class action or a group can be proceeded against as a class, the group must in fact constitute a class and those joined in the action as representative defendants must be members of the class. The Court finds that the Newlands Project certificate holders who are members of the TCID do constitute a class. All certificate holders on the project have a common claim and interest in the waters diverted for use on the project and membership in the class is further defined by membership in TCID.

█ The seven individuals sought to be joined as representative defendants of the class are in fact members of the class. See Exhibit "1" attached to State of Nevada's Motion to Dismiss for Failure to Join Indispensable Parties, filed August 14, 1974. Although TCID is not technically a member of the class inasmuch as it is the organization composed of the members of the class, it is nonetheless an appropriate representative. TCID is already a defendant in this action and exists for the purpose of representing its members and protecting or asserting their common interests. See, Norwalk Core v. Norwalk Redevelopment Agency, 395 F.2d 920, 937 (2nd Cir. 1968); Wright and Miller, Federal Practice and Procedure: Civil § 1761, p. 589 (1972).

██ The Court finds that "the class is so numerous that joinder of all members is impracticable." Rule 23(a)(1) F.R.C.P. There are approximately 3800 members of the class. While this number is not so startling when compared to the some 13,000 individual defendants already joined, it is still a self-evidently large class when considered by itself. It would be difficult and inconvenient to join all members of the class as it would take an additional six to twelve months to serve each member in the traditional manner. This would necessarily involve considerable additional expense to the United States and the Tribe, even though all members are within a relatively

small area and all within the Court's immediate jurisdiction. Joinder of each certificate holder individually would also be inconvenient to the members of the class. Individual claims would be quite small in comparison to the amount of money and time which would be required to participate in this litigation. Joinder need not be impossible, only difficult and inconvenient. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913–14 (9th Cir. 1964).

The Court finds that there are both questions of law and fact common to the class. Rule 23(a)(2), F.R.C.P. As against the United States and the Tribe, the defenses of each member of the class would be identical and there would be no claims of any one member which would be adverse to any other member. "[T]he claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3), F.R.C.P. The claims or defenses of TCID would also be identical with the members of the class.

"[T]he representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(4), F.R.C.P. Adequacy of representation is a question of fact. Harris v. Palm Springs Alpine Estates, Inc., supra. It would seem there could be no better representative of the class than TCID which was formed for just such a purpose. Although it has opposed the use of the class action device, counsel for TCID have indicated that they will gladly represent the class. The seven individual members were not picked at random. They are the current directors of TCID duly elected by members of the class. As such they have more than a passing interest in this litigation. TCID has already taken a very active role in this case and will, no doubt, continue to do so. It would appear there would be a great deal of communication between TCID, the seven individual representatives and the members of the class, and that all will be most ably represented.

Turning to subsection (b) of Rule 23, the United States contends that the Newlands Project certificate holders may be proceed-

ed against as a class under the standards of (b)(1)(A) or (b)(1)(B).[4] If either is applicable, a class action is proper.

Obviously, if the United States could not join the certificate holders as a class, it and the Tribe would be forced to join them individually and establish the rights which they seek as against each. As a matter of practical necessity, the United States and the Tribe would be forced to act and litigate in the same manner against individual certificate holders as it would toward the certificate holders as a class. *See*, Wright and Miller, *Federal Practice and Procedure* : Civil § 1773, p. 11 (1972). This would then create a risk of inconsistent or varying adjudications of the rights of each individual certificate holder which, when considered together, could impair the uniform course of conduct which the Tribe and the United States seek to pursue; that is, to establish water rights, some of which they contend are prior to the rights of certificate holders. The standards of subsection (b)(1)(A) are met.[5]

Probably the most appealing argument for joining the certificate holders as a class is one of sheer practicality. Treating the certificate holders as a class provides "a ready and fair means of achieving unitary adjudication" of the rights of the United States and the Tribe and the certificate holders. Note of Advisory Committee on Rules, 39 F.R.D. 69, 100.[6] If each certificate holder were joined individually, in all likelihood only a handful would appear and be represented due to the time and expense involved, yet all who were joined would be bound. The same result can be achieved by joinder of the class, but with considerable savings of time and money. Each member of the class will be bound by any final decision under Rule 23(c)(3), but all will be ably represented, not just a few. However, if any member of the class desires to participate in the case through his own counsel or pro. per., he will be given that opportunity.[7] An appropriate Order giving effect to the Court's findings herein follows this Memorandum.

### III.

Rule 23(d)(2) sets forth the requirement of notice to some or all members of the class when the action is brought as a (b)(1)(A) type class action.

"(d) Orders in Conduct of Actions. In the conduct of actions to which this rule applies, the court may make appropriate orders:   .   .   .

(2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be

---

4. "(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;
.   .   ."

5. The only basis which the government sets forth for proceeding against the certificate holders as a class under subsection (b)(1)(B) seems to be that adjudication of a few of the certificate holders' rights as against the United States and the Tribe would as a practical mat-

ter be dispositive of the others' interests by *stare decisis*. If the Court correctly understands the argument, it is not well taken. The *stare decisis* consequences of one or a few adjudications of certificate holders' rights cannot supply the practical disposition of all other rights of the class. *LaMar v. H & B Novelty and Loan Co.*, 489 F.2d 461, 467 (9th Cir. 1973).

6. It should also be noted that in its comments concerning Rule 23(b)(1)(A) the Advisory Committee cites with approval *Rank v. (Krug) United States, supra*. Notes of Advisory Committee on Rules, *supra*.

7. It should be kept in mind that if it becomes apparent during the course of these proceedings and prior to a decision on the merits that joinder of the certificate holders as a class was improper or that they should not be treated as a class, the Court has the power to alter or amend this Order according to Rule 23(c)(1), F.R.C.P.

given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action.

. . . ."

Rule 23(d)(2), of course, does not provide for a specific manner of notice or the form of the notice. These are matters left to the court's discretion to be dictated by the circumstances of each case. Any notice must, of course, comport with due process, but this does not mean that personal service of the filing of a class action against the certificate holders must be made. In this regard the recent United States Supreme Court case of *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), provides the needed guidance.

■ Although the court in *Eisen* was concerned only with a Rule 23(b)(3)-type class action and the type of notice required by Rule 23(c)(2) and expressly stated that the decision did not apply to the notice required in cases brought under subdivisions (b)(1) and (b)(2) (*See, Eisen, supra*, n. 14), it is at least authority that individual notice by mail, as was held required, to all prospective class members in a (b)(1) or (b)(2) class action would certainly be sufficient in light of the discretionary language of Rule 23(d)(2). Such notice would comply with the requirements of due process. *See, Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Since the United States has indicated its desire to provide each prospective class member with notice by mail, the Court finds that it shall be given. A form of notice to be mailed is attached. The cost of providing notice to each class member must be borne by the United States and the Tribe equally and such procedure shall commence forthwith. TCID and the State Water Engineer will cooperate fully in furnishing the names and addresses of all class members.

The Court is of the opinion that publication of notice, as well as notice by mail, would be duplicitous and serve no purpose. This action is already widely publicized in and around the Truckee River drainage. Notice of the initiation of the action has already been published, although it did not relate specifically to certificate holders. Any class member who, through absence or inadvertence, does not know of the pendency of the action will be so informed by the mailing procedure.