**UNITED STATES of America, Plaintiff,**

v.

**71.22 ACRES OF LAND, MORE OR LESS SITUATED IN UTAH COUNTY, STATE OF UTAH, and Utah Power & Light Company, et al., Defendants.**

Civ. No. C–83–1179W.

United States District Court,
D. Utah, C.D.

July 2, 1987.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on defendant Utah Power & Light Company's ("UP & L") motion to dismiss plaintiff United States' ("U.S.") complaint. U.S. and UP & L submitted memoranda and these matters were argued orally on June 15, 1987. Joseph W. Anderson appeared on behalf of the United States. Jody L. Williams, Jody K. Feuerhelm and Anthony L. Rampton appeared on behalf of UP & L. Following oral argument the court took this matter under advisement. After considering the arguments of counsel, the memoranda and the relevant authority the court now renders the following decision and order.

### I.

Plaintiff's complaint seeks to condemn certain non-consumptive water rights and related diversion facilities[1] on the Provo River used to produce electricity in UP & L's Olmsted hydroelectric plant in the mouth of Provo Canyon. The U.S. proposes to use these water rights and property interests in conjunction with the development of the Bonneville Unit of the Central Utah Project.[2] The complaint in this action states that condemnation is sought pursuant to 40 U.S.C. § 257, which generally authorizes condemnation whenever the government is authorized to acquire real property for public purposes, the Colorado River Storage Project Act, 43 U.S.C. § 620 *et seq.*, and the Reclamation Act of 1902, 43 U.S.C. § 371 *et seq.*

### II.

#### A.

UP & L's motion to dismiss relies primarily on sections 7 and 8 of the Reclamation Act of 1902 and a recent United States Supreme Court decision interpreting those

Joseph W. Anderson, Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff.

Anthony L. Rampton and Jody L. Williams, Salt Lake City, Utah, for defendants.

1. Schedule A of plaintiff's complaint indicates plaintiff's want to condemn the Olmsted Diversion Dam, the Union Aqueduct a/k/a Olmsted Flow Line a/k/a Olmsted Feeder Pipe and related land and easements.

2. Upon completion of the Bonneville Unit, water will be diverted through the aqueduct for use by Utah County and Salt Lake City.

provisions. *California v. United States,* 438 U.S. 645, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978). UP & L contends that this authority requires the U.S. to comply with state law when condemning water rights and diversion facilities for a reclamation project.

Section 7 of the Reclamation Act of 1902, 43 U.S.C. § 421 provides:

> Where, in carrying out the provisions of this Act it becomes necessary to acquire any rights or property, the Secretary of the Interior is authorized to acquire the same for the United States by purchase or condemnation under judicial process, and to pay from the reclamation fund the sums which may be needed for that purpose, and it shall be the duty of the Attorney General of the United States upon every application of the Secretary of the Interior, under such sections, to cause proceedings to be commenced for condemnation within thirty days from receipt of the application at the Department of Justice.

Section 8, 43 U.S.C. § 383, provides:

> Nothing in this Act shall be construed as affecting or intending to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of such sections, shall proceed in conformity with such laws, and nothing in such sections shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to or from any interstate stream or the waters thereof.

These provisions were discussed at some length in *California v. United States.* In that case, the United States sought to impound 2.4 million acre feet of water behind the New Melones Dam in Central California. The United States applied to the California State Water Resources Control Board for an allocation of this water. The Board ruled that under state law the water could not be allocated to the United States unless it complied with certain conditions dealing with the water's use.[3] The United States then sought a declaratory judgment in federal court which would allow it to obtain whatever unappropriated water was necessary for the New Melones Dam without complying with the Board's conditions. The District Court and the Court of Appeals for the Ninth Circuit ruled in favor of the United States. The Supreme Court reversed, holding that section 8 of the 1902 Act requires the Federal Government to abide by any condition a state may impose on the "control, appropriation, use, or distribution of water" through a federal reclamation project that is not inconsistent with clear Congressional directives respecting that project.

Plaintiff acknowledges that the court's holding would require it to comply with Utah law were allocation of water rights an issue, but contends that *California v. United States* does not require adherence to state law in condemnation proceedings.[4] UP & L disagrees, arguing that the opinion makes it clear that condemnation proceedings must conform to state law.

In *California v. United States* the Supreme Court makes an extensive review of federal reclamation projects in the arid western states and concludes that history demonstrates a "consistent thread of purposeful and continued deference to state water law by Congress." 438 U.S. at 653, 98 S.Ct. at 2990. After quoting section 8 of the Reclamation Act, the court explains:

> From the legislative history of the Reclamation Act of 1902, it is clear that state law was expected to control in two important respects. First and of control-

---

3. The most important condition prohibited full impoundment until the Bureau of Reclamation could show firm commitments for the water or a specific plan for the water's use.

4. The U.S. also argues that since the United States can inversely condemn water rights, *see*

*United States v. Gerlach Livestock Co.,* 339 U.S. 725, 70 S.Ct. 955, 94 L.Ed.2d 1231 (1950), it should also have authority to condemn. This argument is simply without merit and would require this court to completely ignore *California v. United States.*

ling importance to this case, the Secretary would have to appropriate, purchase, or *condemn* necessary water rights in strict conformity with state law. (emphasis added) 438 U.S. at 665, 98 S.Ct. at 2996.

Later in the opinion the court also states "[t]he legislative history of the Reclamation Act of 1902 makes it abundantly clear that Congress intended to defer to the substance, as well as the form of state water law." 438 U.S. at 675, 98 S.Ct. at 3001.

The Supreme Court also specifically disavows dicta in an earlier opinion that suggests water rights could be condemned under federal law. In *Fresno v. California,* 372 U.S. 627, 83 S.Ct. 996, 10 L.Ed.2d 28 (1963) the Court states:

> Section 8 does not mean that state law may operate to prevent the United States from exercising the power of eminent domain to acquire the water rights of others.... Rather, the affect of Section 8 in such a case is to leave to state law the definition of the property interests, if any, for which compensation must be made. *Id.* at 630, 83 S.Ct. at 998.

After citing this language from *Fresno,* the Court in *California v. United States* states: "We disavow this dictum, however, to the extent that it implies that state law does not control even where not inconsistent with such expressions of Congressional intent." 438 U.S. at 671 n. 24, 98 S.Ct. at 2999 n. 24.

▮ Although all of the statements quoted from *California v. United States,* are dicta,[5] the Court in *California v. United*

*States* leaves little doubt that state law is to control the condemnation of water rights.[6] In conformity with this authority, this court concludes that section 8 of the Reclamation Act of 1902 requires the United States to comply with state law when condemning water rights.

### B.

Although water rights must be condemned in accordance with state law, it is less clear that state law should also govern the condemnation of the other property rights, including the aqueduct. UP & L argues that these property interests are so intertwined with the water rights that it is impossible to value them separately; thus, UP & L concludes that all of these property rights must be condemned in accordance with state law. Although the court agrees with UP & L's contention that these property rights are intertwined and to some extent the value of one is dependent upon the value of the others, the court is not convinced that state law should govern the condemnation of these associated rights. Although this court has found no case law directly on point, and none has been cited to it, the court believes that the language of the 1902 Act and dicta in several Supreme Court cases indicates that section 8 of the 1902 Act only relates to the acquisition of water rights.

The dispositive language in section 8 deals with the "control, appropriation, use or distribution of water...." Since section 7 of the 1902 Act authorizes the condemnation of all "rights or property," it is appar-

---

**5.** The dissenting opinion states:

"[T]he dicta with which the court's opinion is laced today deserves no more or no less respect than what it has chosen to label as dicta in past court decisions." (White, Brennan and Marshall dissenting) 438 U.S. at 695, 98 S.Ct. at 3011.

Subsequent case law, however, only confirms the *California v. United States* dicta. In *South Delta Water Agency v. United States,* 767 F.2d 531 (9th Cir.1985) the federal defendants argued that section 2 of the Rivers and Harbors Act of 1937 authorizes the acquisition of water rights even when otherwise forbidden by state law. The Court of Appeals for the Ninth Circuit disagreed. The court relied on *California v. United*

*States*'s interpretation of the 1902 Act, and concluded that the Rivers and Harbors Act also requires the United States to comply with state law in the acquisition of water rights. 767 F.2d at 537.

**6.** The Court also states "Section 8 cannot be read to require the Secretary to comply with state law *only* when it becomes necessary to purchase or condemn vested water rights. That section does, of course provide for protection of vested water rights, but it *also* requires the Secretary to comply with state law in the 'control, appropriation, use, or distribution of water.'" 438 U.S. at 674–75, 98 S.Ct. at 3000–01. (emphasis added)

ent that Congress only intends for state law to control the acquisition of water rights.

The distinction between water rights and other property interests also appears in several Supreme Court decisions. For example, in *Ickes v. Fox*, 300 U.S. 82, 57 S.Ct. 412, 81 L.Ed.2d 525 (1937), while discussing the beneficial ownership of water rights, the Supreme Court states:

Although the government diverted, stored and distributed the water, the contention of petitioner that thereby ownership of the water or water rights became vested in the United States is not well founded. Appropriation was not made for the use of the government, but, under the Reclamation Act, for the use of the landowners; and by the terms of the law and of the contract already referred to, the water rights became the property of the landowners, *wholly distinct from the property right of the government in the irrigation works.* (emphasis added) 300 U.S. at 94–95, 57 S.Ct. at 416.

This same distinction was also made in *Nebraska v. Wyoming*, 325 U.S. 589, 65 S.Ct. 1332, 89 L.Ed.2d 1815 (1945). "The property right in the water right is separate and distinct from the property right in the reservoirs, ditches or canals." 325 U.S. at 614, 65 S.Ct. at 1349.

■ Obviously this authority is not controlling; however, this court believes that the rationale behind federal deference to state water law is absent when the subject is water works, rather than water rights. In *California v. United States* the Court indicates that a "principal motivating factor behind Congress' decision to defer to state law was ... the legal confusion that would arise if federal water law and state water law ranged side by side in the same locality." 438 U.S. at 668–69, 98 S.Ct. at 2997–98. Since the State of Utah has no

compelling reason to protest the acquisition of the aquaduct, and the U.S.'s acquisition of the aquaduct will not create federal law relating to water rights, this court concludes that the U.S. need only defer to state law in the acquisition of water rights. All other property rights can be condemned pursuant to federal law. Although this may, as UP & L argues, create some difficulty in valuing the water rights, this court is unconvinced that this difficulty constitutes a barrier that should force the federal government to adjudicate rights under state law that it could otherwise obtain under federal condemnation statutes.

C.

■ Although the court has concluded that the water rights issue should be adjudicated under state law, this does not mean that the U.S. must file its complaint in state court. Under 28 U.S.C. § 1345 this court has original jurisdiction over all civil actions brought by the federal government "except as otherwise provided by Act of Congress."[7] Although section 8 of the 1902 Act does require adjudication of water rights in accordance with state law, it is silent on the issue of forum. Since section 1345 demonstrates a clear preference for the federal forum, this court will read section 8's silence as Congressional intent to retain jurisdiction.

Retaining jurisdiction is also consistent with the Supreme Court's decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 806–09, 96 S.Ct. 1236, 1240–42, 47 L.Ed.2d 483 (1976), where the Court concludes that legislative intent in the McCarren Amendment[8] did not repeal district court jurisdiction under § 1345.[9] *See also Cappaert v. United States*, 426 U.S. 128, 145–46, 96 S.Ct. 2062, 2072–73, 48 L.Ed.2d 523 (1976) ("... federal courts have jurisdiction under 28 U.S.C.

7. Without deciding the issue, the court notes that jurisdiction may also exist under 28 U.S.C. § 1331.

8. 43 U.S.C. § 666.

9. The Court in *Colorado River* did hold that the District Court should abstain from exercising

jurisdiction because of a contemporaneous state action. No reasons exist for abstention in this case. *See Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983); *United States v. Adair*, 723 F.2d 1394 (9th Cir.1984) *cert. denied* 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984).

§ 1345 to · adjudicate the water right's claims of the United States."). This court will therefore retain jurisdiction over these proceedings.

Accordingly,

IT IS HEREBY ORDERED that Utah Power & Light Company's motion to dismiss plaintiff United States' complaint is granted in part and denied in part. The United States must condemn Utah Power & Light's water rights in conformity with state law. All other property rights sought by the United States may be condemned in accordance with federal law. The United States is granted 20 days to file an amended complaint in this action.