SOUTH DELTA WATER AGENCY, Alexander Hildebrand, Barbara Hildebrand, Lafayette Ranch, Plaintiffs-Appellees,

v.

UNITED STATES of America, DEPARTMENT OF INTERIOR, BUREAU OF RECLAMATION, James G. Watt, et al., Defendants-Appellants,

and

State of California, Department of Water Resources, and David N. Kennedy, Defendants-Appellees.

No. 84–1758.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 18, 1985.

Decided July 26, 1985.

David Whitridge, John A. Wilson, Wilson & Hoslett, Stockton, Cal., for plaintiffs-appellees.

Mary E. Hackenbracht, Deputy Atty. Gen., San Francisco, Cal., for defendants-appellees.

Robert L. Klarquist, Dept. of Justice, Washington, D.C., for defendants-appellants.

Before DUNIWAY and PREGERSON, Circuit Judges, and KELLEHER,* District Judge.

PREGERSON, Circuit Judge:

Federal defendants brought this interlocutory appeal from the district court's denial of their motion to dismiss plaintiffs' suit for declaratory and injunctive relief. For the reasons stated below, we affirm the district court's denial of the defendants' motion to dismiss.

## FACTS

This appeal involves the federal defendants' operation of the Central Valley Project (CVP), the nation's largest water reclamation project.[1]

The California legislature originally conceived of the CVP "to conserve and put to maximum beneficial use the waters of the Central Valley of California." *Dugan v. Rank*, 372 U.S. 609, 612, 83 S.Ct. 999, 1002, 10 L.Ed.2d 15 (1963) (citing the Feasibility Report of Secretary of the Interior Ickes to President Franklin D. Roosevelt, dated November 26, 1935, *reprinted in* 90 F.Supp. 823–827). Unable to finance the project

---

* The Honorable Robert J. Kelleher, Senior United States District Judge, Central District of California, sitting by designation.

1. The federal defendants are the United States, the Department of Interior, the Secretary of the Interior, the Commissioner of Reclamation, the Bureau of Reclamation, and the Regional Director of the Bureau.

alone, California requested that the United States join in the enterprise. President Franklin D. Roosevelt authorized the CVP under the provisions of the Emergency Relief Appropriation Act of 1935, ch. 48, § 4, 49 Stat. 115, and Congress re-authorized the CVP pursuant to the Rivers and Harbors Act of August 26, 1937, ch. 832, 50 Stat. 844, 850.

California has two mountain ranges running two-thirds the length of the state. The Sierra Nevada Range on the east and the Coastal Range on the west converge at Mount Shasta in the north and at the Tehachapi Mountains in the south. The two ranges form the Central Valley Basin. The Sacramento Valley, containing the Sacramento River, lies in the northern portion of the Central Valley, and the San Joaquin Valley, containing the San Joaquin River, lies in the southern portion. The Sacramento River has a surplus of water because of heavier rainfall in the northern region, but its valley has little tillable soil. The San Joaquin River, in contrast, does not supply sufficient water for the extensive amount of tillable soil in its valley. The CVP transports some of the Sacramento River's surplus water to the San Joaquin Valley and permits the waters of the San Joaquin River to be diverted for irrigation and other purposes to new areas where water is scarce. *See Dugan v. Rank,* 372 U.S. at 612, 83 S.Ct. at 1002.

The essential components of the CVP have been operational since 1953 and certain of its facilities were in partial operation several years before. Facilities located in the northern portion of the Central Valley store waters of the Sacramento, Trinity, and American Rivers. These waters are transported south down the Sacramento River to the Sacramento-San Joaquin Delta, an area east of San Francisco Bay. The waters are then pumped from the Delta into the Delta Mendota Canal for southerly transportation to the San Joaquin River.

Friant Dam, a CVP component located North of Fresno, impounds water from the San Joaquin River and stores it in Millerton Lake. The Madera and Friant-Kern canals then divert the water to the Southern Central Valley for irrigation use and other public purposes.[2]

The South Delta Water Agency, a municipal corporation representing the interests of water rights holders in the Southern Sacramento-San Joaquin Delta, along with two private delta water users who own land within the Southern Delta, sued the state and federal governments, requesting declaratory and injunctive relief. The plaintiffs (hereinafter referred to as South Delta) alleged that the federal and state defendants[3] were operating their respective water facilities in a manner that violated South Delta's water rights under federal and state law.[4]

The federal defendants moved to dismiss on the grounds that (1) the United States had not waived its sovereign immunity, and (2) the district court lacked jurisdiction.[5] The district court denied this motion on October 21, 1983.

The district court ruled that Congress had waived sovereign immunity in the Administrative Procedure Act (APA), 5 U.S.C.

---

**2.** The CVP is described in greater detail in *Dugan v. Rank,* 372 U.S. 609, 611–14, 83 S.Ct. 999, 1001–03, 10 L.Ed.2d 15 (1963); *Ivanhoe Irrigation District v. McCracken,* 357 U.S. 275, 279–87, 78 S.Ct. 1174, 1177–82, 2 L.Ed.2d 1313 (1958); and *United States v. Gerlach Livestock Co.,* 339 U.S. 725, 727–30, 70 S.Ct. 955, 956–58, 94 L.Ed. 1231 (1950).

**3.** The state defendants are the State of California, the Department of Water Resources, and the Director of the Department of Water Resources.

**4.** South Delta also alleged that the Secretary of the Interior violated section 203 of the Flood Control Act of 1962 by failing to include certain lands in the area defined as the Stanislaus River Basin. This allegation, however, is not at issue in this appeal.

**5.** The federal defendants also argued that the statute of limitations and laches barred the complaint and that South Delta lacked standing to sue. Because the district court certified for interlocutory appeal only the jurisdiction and sovereign immunity issues, *see infra* n. 6, these are the only issues we address.

§§ 701–706 (1982), which provides for judicial review of agency action where there is law limiting agency discretion. The court found that federal and state law limited agency discretion, thereby activating the APA's waiver of sovereign immunity. The court also held that it had subject matter jurisdiction under 28 U.S.C. § 1331 (1982), rejecting the federal defendants' arguments that the Tucker Act, 28 U.S.C. § 1346 (1982), and the McCarran Amendment, 43 U.S.C. § 666 (1982), operate to preclude jurisdiction under section 1331.

On January 3, 1984, the district court certified its order for interlocutory appeal under 28 U.S.C. § 1292(b) (1982).[6] And, on March 20, 1984, we granted the federal defendants' petition for permission to appeal.

For the reasons stated herein, we affirm the district court's rulings that the federal government waived its sovereign immunity under the APA and that the district court had subject matter jurisdiction under 28 U.S.C. § 1331 (1982).

## STANDARD OF REVIEW

■ Because the issues involved in this appeal relate to jurisdiction, we review them de novo. *Carpenters Southern California Administrative Corp. v. Majestic Housing,* 743 F.2d 1341, 1343 (9th Cir. 1984).

## DISCUSSION

As amended in 1976, the Administrative Procedure Act provides a broad waiver of sovereign immunity so long as certain conditions are met. *See* 5 U.S.C. §§ 701–706 (1982). Two of those conditions, at issue in this case, are (1) that the agency action not be committed to agency discretion by law, *id.* § 701(a)(2), and (2) that there is no other statute that grants consent to suit, but expressly or impliedly forbids the relief sought. *Id.* § 702.

■ The district court lacks jurisdiction in a suit against the federal government unless Congress has consented to be sued, *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). But Congress's waiver of sovereign immunity does not by itself confer jurisdiction. In *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977), the Supreme Court held that the APA does not confer jurisdiction on federal courts to review agency action. At the same time, however, the Court held that 28 U.S.C. § 1331 does confer such jurisdiction, "subject only to preclusion-of-review statutes created or retained by Congress...." *Id.* at 105, 97 S.Ct. at 984.

This limitation on jurisdiction under section 1331—i.e., that no other statute addressing the cause of action precludes judicial review—is essentially the same as the limitation contained in section 702 of the APA. The federal defendants in the instant case argue that the Tucker Act and the McCarran Amendment are statutes that grant consent to suit but preclude the relief plaintiffs request. These statutes can be analyzed either in terms of whether they preclude waiver of sovereign immunity under the APA or whether they preclude jurisdiction under section 1331. Because the district court chose to discuss these statutes in terms of their effect on its

**6.** Specifically, the district court certified the following two issues for appeal:

(1) Whether—under the standards outlined in *California v. United States,* 438 U.S. 645, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978), and *United States v. California,* 694 F.2d 1171 (9th Cir. 1982), and in light of *Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963)—43 U.S.C. § 383 and applicable state law operate to limit agency discretion, thereby activating the waiver of sovereign immunity contained in the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.,* and making this case reviewable thereunder; and

(2) Whether the Tucker Act, 28 U.S.C. § 1346, and/or the McCarran Amendment, 43 U.S.C. § 666, when read in conjunction with the Quiet Title Act, 28 U.S.C. § 2409a, operate as "preclusion of review statutes," thereby negat-

jurisdiction under section 1331, we likewise will do so.[7]

## I.  *Sovereign Immunity*

██ The United States is immune from suit except in instances where it consents to being sued. *Bank of Hemet v. United States*, 643 F.2d 661, 664 (9th Cir.1981). Federal agencies and instrumentalities, as well as federal employees acting in their official capacities within their authority, are similarly immune from suit. *Merced Production Credit Association v. Sparkman (In re Sparkman)*, 703 F.2d 1097, 1101 (9th Cir.1983) (citing *Federal Housing Administration v. Burr*, 309 U.S. 242, 244, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940)) (federal agencies and instrumentalities); *Aminoil U.S.A., Inc. v. California State Water Resources Control Board*, 674 F.2d 1227, 1233 (9th Cir.1982) (federal employees).

██ As the district court properly ruled, however, the 1976 amendment to section 702 of the APA [8] waived sovereign immunity in the instant case. Section 702 of the APA provides in relevant part:

> An action in a court of the United States seeking *relief other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702 (1982) (emphasis added). Thus, section 702 of the APA, as amended in 1976, considerably narrows the sovereign immunity limitation on the broad rule of judicial reviewability of agency action. *Marshall v. Kleppe*, 637 F.2d 1217, 1221 (9th Cir.1980) (citing *City of Santa Clara v. Andrus*, 572 F.2d 660, 666 (9th Cir.), *cert. denied*, 439 U.S. 859, 99 S.Ct. 176, 58

L.Ed.2d 167 (1978)). The Supreme Court has stated that, under section 702 of the APA, an action seeking relief other than money damages is nonreviewable and the waiver of sovereign immunity inapplicable only "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971) (citing S.Rep. No. 572, 79th Cong., 1st Sess. 26 (1945)). Only where there are no laws to determine the lawfulness of an agency's action, and where, therefore, there is no possibility of issues being presented that are subject to judicial resolution, is an agency's action immune from suit.[9] *City of Santa Clara*, 572 F.2d at 666. As the district court properly ruled, the laws governing the federal defendants' operation of the CVP and their acquisition of water rights provide ample standards to evaluate the lawfulness of the defendants' actions. Therefore, their actions are reviewable.

### A.  *Law Constraining Federal Defendants*

██ Contrary to federal defendants' contentions, the federal government must acquire water rights in accordance with state law. In *California v. United States*, 438 U.S. 645, 664, 668, 673, 678–79, 98 S.Ct. 2985, 2995, 2997, 2999, 3002–03, 57 L.Ed.2d 1018 (1978), the United States Supreme Court clearly stated that federal reclamation projects must comply with state water laws except where such laws are inconsistent with congressional directives:

> The United States suggests that, even if the Congress of 1902 intended the Secretary of the Interior to comply with state law, more recent legislative enactments have subjected reclamation projects "to a variety of federal policies

---

ing subject matter jurisdiction as otherwise conferred by 28 U.S.C. § 1331.

**7.** Had the district court chosen to discuss these statutes in terms of whether they preclude waiver of sovereign immunity, we also could have done so and would have reached the same result we reach under our jurisdictional analysis.

**8.** *See infra* n. 13.

**9.** As noted above, the APA also requires that no other statute grants consent to suit, but forbids the relief sought. We discuss this limitation in our section concerning jurisdiction.

that leave no room for state controls on the operation of a project or on the choice of uses it will serve." ... While later Congresses have indeed issued new directives to the Secretary, they have consistently reaffirmed that the Secretary should follow state law in all respects not directly inconsistent with these directives.

*Id.* at 677–78, 98 S.Ct. at 3002–03.

Moreover, when Congress reauthorized the CVP in the Rivers and Harbors Act of 1937, Pub.L. No. 75–392, § 2, 50 Stat. 844, 850, Congress provided that the provisions of "the reclamation law" govern that project.[10] And, "the reclamation law" includes the Reclamation Act of 1902, which provides at section 8:

Nothing in [this Act] shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of [this Act], shall proceed in conformity with such laws....

Reclamation Act of 1902, ch. 1093, § 8, 32 Stat. 390 (codified at 43 U.S.C. § 383 (1982)).

Federal defendants argue that they cannot be sued because they need not comply with California water law. They contend that section 2 of the Rivers and Harbors Act of 1937, and *Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), authorize their acquisition of water rights for the CVP by seizure or otherwise, even where state law would bar the acquisition. We disagree with this contention.

■ Section 2 of the 1937 Act does not authorize federal preemption of state law. Section 2 authorizes the Secretary to "acquire by proceedings in eminent domain, or otherwise, all lands, rights-of-way, water rights, and other property necessary for [CVP] purposes." 50 Stat. at 850. Although in isolation this clause may appear to support defendants' contention, a reading of section 2 in the context of the remainder of the reclamation law leads us to the opposite conclusion.

Section 7 of the 1902 Act provides authority similar to that of section 2 of the 1937 Act: "[T]he Secretary of the Interior is ... authorized to acquire [any rights or property] by purchase or by condemnation under judicial process." 32 Stat. at 390. In *California v. United States*, the Supreme Court interpreted the 1902 Act, including section 7, as requiring federal defendants to comply with state law in appropriating, purchasing, or condemning water rights. 438 U.S. at 665, 98 S.Ct. at 2996. Although section 2 includes the word "otherwise" in its reference to acquisitions, which section 7 does not, we find no evidence that "otherwise" includes methods in contravention of state law, or that Congress, when it passed the 1937 Act, intended that Act to preempt state law.

Forty-one years after Congress passed the 1937 Act, the Supreme Court clearly stated:

The history of the relationship between the Federal Government and the States in the reclamation of the arid lands of the Western States is both long and involved, but through it runs *the consistent thread of purposeful and continued deference to state water law* by Congress.

*California v. United States*, 438 U.S. at 653, 98 S.Ct. at 2990 (emphasis added). Surely the Court was aware of the 1937 Act, as well as the 1902 Act, when it referred to the historic congressional deference to state water law. Because the two statutes are clearly comparable, we are guided by the Court's interpretation of section 7 of the 1902 Act and interpret section 2 of the 1937 Act to require the federal defendants in the instant case to comply with state law both in their operation of the

---

**10.** "The provisions of the reclamation law, as amended, shall govern the repayment of expenditures and the construction, operation, and

maintenance of the dams, canals, power plants ... and incidental works deemed necessary to said entire project." 50 Stat. 844, 850 (1937).

CVP and in their acquisition of water rights for the project.

## B. *California Law Affecting Federal Defendants' Actions*

California Water Code § 11460 (as made applicable to defendants by section 11128)[11] contains state law limiting the CVP's operation. Section 11460(a) provides:

> In the construction and operation by the [California] [D]epartment [of Water Resources] of any project under the provisions of this part a watershed or area wherein water originates, or an area immediately adjacent thereto which can conveniently be supplied with water therefrom, shall not be deprived by the department directly or indirectly of the prior right to all of the water reasonably required to adequately supply the beneficial needs of the watershed area, or any of the inhabitants or property owners therein.

Cal.Water Code § 11460(a) (West Supp. 1985).

Federal defendants erroneously suggest that the Supreme Court, in *City of Fresno v. California,* 372 U.S. 627, 83 S.Ct. 996, 10 L.Ed.2d 28 (1963), conclusively determined that section 11460 could not limit the CVP's operations in this case. In *City of Fresno,* the Supreme Court held that section 8 of the Reclamation Act of 1902 did not require the Secretary of the Interior to comply with California statutes relating to watersheds of origin. *Id.* at 629–30, 83 S.Ct. at 997–98. The Supreme Court further found that even if section 11460 did apply to the federal defendants in that case, their operation of Friant Dam did not violate the Act. Neither of these *City of Fresno* holdings, however, bar South Delta's claim in the present case.

As discussed above, in the subsequent case of *California v. United States,* 438 U.S. at 678, 98 S.Ct. at 3002, the Supreme Court interpreted section 8 of the 1902

Reclamation Act to require federal defendants' compliance with state law in the absence of clear congressional directives. The Court dismissed as dicta the statement in *City of Fresno* that section 8 did not require federal defendants to comply with state water law. *See California v. United States,* 438 U.S. at 671–72 n. 24, 674–75, 98 S.Ct. at 2999 n. 24, 3000–01 (1978).

Moreover, contrary to defendants' suggestion, the *City of Fresno*'s 1963 finding that the operation of Friant Dam conformed with section 11460 does not bar South Delta from alleging that the defendants' *current* operation of Friant Dam violates the Act. For defendants' suggestion to be valid, the present case must satisfy the rules of res judicata.

■■■ To promote judicial economy, the two doctrines of res judicata preclude an existing suit because of an adjudication of a prior law suit. The first doctrine, claim preclusion, "treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action'." 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure,* § 4402 at 7 (1981). *See also,* Cal.Civ.Proc.Code §§ 1908, 1910 (West 1983). Because there is no evidence that South Delta was a party to or in privity with the plaintiffs in *City of Fresno,* South Delta is not barred by claim preclusion from suing in the present case.

■■■ The second doctrine, collateral estoppel or issue preclusion, "bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties." 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure,* § 4402 at 7. *See also Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). In addition to involving a plaintiff different from the one involved in *City of Fresno,* the issue whether

---

**11.** Section 11128 provides that

The limitations prescribed in section 11460 ... shall also apply to any agency of the State or Federal government which shall undertake

the construction or operation of the project, or any unit thereof.

Cal.Water Code § 11128 (West 1971).

federal defendants' *current* operation of the CVP violates section 11460 presents a question different from that litigated in 1963 in *City of Fresno*. For example, because of increased demand, the federal government's present operation of Friant Dam may diversify more water than was the case in 1963. Thus, neither claim preclusion nor collateral estoppel bars South Delta's claim in the present case.

After correctly determining that section 11460 adequately constrained federal defendants, the district court also correctly determined that section 11460 did not conflict with expressions of congressional intent. *See United States v. California*, 694 F.2d 1171, 1177 (9th Cir.1982). The burden of proof lies with federal defendants to show that compliance would violate a relevant congressional directive. *United States v. California*, 694 F.2d at 1177. Federal defendants again refer to section 2 of the Rivers and Harbors Act of 1937, and *City of Fresno*, 372 U.S. 627, 83 S.Ct. 996, as evidence of congressional intent contrary to state law. As we have explained above, neither section 2 nor *City of Fresno* provides evidence that Congress intended to preempt state law in this area. Nor do federal defendants provide evidence of any other congressional conflict with section 11460.

State law, therefore, adequately constrains the federal defendants' rights by providing "law to be applied." *See* 5 U.S.C. § 706. And the relevant state law does not conflict with any expression of congressional intent. As the district court properly concluded, therefore, review is proper under the APA, and the federal government has waived sovereign immunity.

**12.** The Tucker Act provides in pertinent part: the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government

## II.  *Jurisdiction*

Section 1331 of Title 28 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1982). As noted above, the Supreme Court has interpreted section 1331 as conferring jurisdiction on federal courts to review agency action "subject only to preclusion-of-review statutes created or retained by Congress...." *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). The federal defendants argue that the Tucker Act, 28 U.S.C. § 1346, and the McCarran Amendment, 43 U.S.C. § 666, preclude the review South Delta seeks.

### A.  *The Tucker Act*

The federal defendants argue that the Supreme Court's decisions in the companion cases of *Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), and *City of Fresno v. California*, 372 U.S. 627, 83 S.Ct. 996, 10 L.Ed.2d 28 (1963), limit South Delta's relief to damages in an action for inverse condemnation under the Tucker Act, 28 U.S.C. § 1346.[12]

The plaintiffs in *Dugan* and *City of Fresno*, asserting water rights on a segment of the San Joaquin River downstream from the Friant Dam, brought actions to restrain the federal government from storing and diverting waters at the dam. The Supreme Court held that the plaintiffs' suits did not meet the criteria necessary to activate the waiver of sovereign immunity in the McCarran Amendment because they were not "*general* adjudication[s] of 'all of the rights of various owners on a given stream....'" *Dugan*, 372 U.S. at 618, 83 S.Ct. at 1005 (quoting S.Rep. No. 755, 82d Cong., 1st Sess. 9 (1951)) (emphasis in origi-

while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (1982).

nal); *see City of Fresno,* 372 U.S. at 629, 83 S.Ct. at 997.

*Dugan* and *City of Fresno* were decided thirteen years before Congress amended section 702 of the APA to provide for a broad waiver of sovereign immunity in suits for relief other than money damages. Therefore, one of the only routes to review left open to plaintiffs in *Dugan* and *City of Fresno* was the Tucker Act, wherein Congress waived immunity in suits for damages. The federal defendants in the instant case misinterpret the Supreme Court's statements in *Dugan* and *City of Fresno* that the recourse open to plaintiffs in those cases was through a Tucker Act suit. *See Dugan,* 372 U.S. at 611, 626, 83 S.Ct. at 1001, 1009; *City of Fresno,* 372 U.S. at 629, 83 S.Ct. at 997. The Court was not limiting relief in water rights suits against the United States to inverse condemnation damages, but simply observing that the Tucker Act provided the only avenue of review left open to the plaintiffs in those cases.

The 1976 amendments to both the APA [13] and section 1331 [14] together opened up an entirely new avenue of review of agency actions for parties seeking relief other than money damages. We repeatedly have rejected the argument that the Tucker Act impliedly precludes review of cases where the parties seek relief other than money damages. "The Tucker Act, by its terms, applies only to claims for money damages. Therefore, it does not preclude review of agency action when the relief sought is other than money damages." *Rowe v. United States,* 633 F.2d 799, 802 (9th Cir. 1980), *cert. denied,* 451 U.S. 970, 101 S.Ct.

2047, 68 L.Ed.2d 349 (1981); *see Laguna Hermosa Corp. v. Martin,* 643 F.2d 1376, 1379 (9th Cir.1981).

Because South Delta seeks injunctive and declaratory relief, not damages, the Tucker Act does not preclude jurisdiction under section 1331.

## B. *The McCarran Amendment*

The federal defendants also argue that the McCarran Amendment, 43 U.S.C. § 666, precludes review of water rights suits against the United States except for suits involving claims specified in the statute. The Amendment, which provides review in limited circumstances, states in relevant part:

(a) Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit.

43 U.S.C. § 666 (1982).

### 1. *The case does not meet the review requirements for review under the McCarran Amendment.*

The parties agree that the instant suit does not meet the requirements of subsection (1) of the McCarran Amendment because the suit does not involve a general stream adjudication. *See Dugan v. Rank,* 372 U.S. at 618, 83 S.Ct. at 1005. But defendant-appellee State of California ar-

---

**13.** In 1976, Congress added the italicized language to section 702 of the APA, waiving sovereign immunity in suits against the United States seeking relief other than money damages:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. *An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of*

*legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party....*
5 U.S.C. § 702 (1982).

**14.** In 1976, Congress eliminated the $10,000 amount in controversy requirement in section 1331, so that the statute simply provides: "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1982).

gues that the instant suit fits within subsection (2) and is reviewable as a suit for "the administration of [water] rights." We are unable to accept the State's argument.

South Delta, in its complaint, alleges that the operation of the CVP diminishes the quality and quantity of South Delta's water and seeks both declaratory and injunctive relief.[15] But there has been no judicial determination whether South Delta has rights to the water it asserts the CVP is affecting. Logically, a court cannot adjudicate the administration of water rights until it determines what those rights are. If plaintiffs' claim were reviewable merely because it relates to the administration of water rights, without plaintiffs first proving the validity of that claim, then the requirement of a general stream adjudication contained in subsection (1) would be superfluous; any party could gain review of agency action by arguing that it is merely seeking a subsection (2) administration, not a subsection (1) determination, of water rights.

■ We agree with the conclusion of United States District Judge Roger D. Foley expressed in *United States v. Hennen,* 300 F.Supp. 256 (D.Nev.1968), that Congress intended a waiver of immunity under subsection (2) only after a general stream determination under subsection (1) has been made:

> To administer a decree is to execute it, to enforce its provisions, to resolve conflicts as to its meaning, to construe and to interpret its language. Once there has been such an adjudication and a decree entered, then one or more persons who hold adjudicated water rights can, within the framework of § 666(a)(2), commence among others such actions as described above, subjecting the United States, in a proper case, to the judg-

ments, orders and decrees of the court having jurisdiction.

*Id.* at 263.

■ Because there has been no prior adjudication of relative general stream water rights in this case, there can be no suit "for the administration of such rights" within the meaning of the McCarran Amendment. 43 U.S.C. § 666(a)(2). Therefore, South Delta's suit fails to meet the requirements for review under the McCarran Amendment.

2. *Failure to meet the requirements for review under the McCarran Amendment does not preclude review under section 1331.*

■ We next must decide whether the district court has jurisdiction over South Delta's claim under the more general grant of jurisdiction in section 1331. Federal defendants assert that the McCarran Amendment is the exclusive avenue of review for water rights disputes involving the United States and that South Delta's failure to fit its suit within the Amendment's requirements precludes jurisdiction under section 1331.

The defendants draw an analogy between the McCarran Amendment and the Quiet Title Act, 28 U.S.C. § 2409a (1982), and rely on a recent Supreme Court decision interpreting the Quiet Title Act, *Block v. North Dakota ex rel. Board of University and School Lands,* 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983), to support their assertion.

In *Block,* the Court held that the legislative history and the " 'balance, completeness, and structural integrity' " of the Quiet Title Act indicated Congress's intent that the Act provide the exclusive means by which adverse claimants could challenge the United States' title to real property. *Id.* at 285, 103 S.Ct. at 1818 (quoting

---

**15.** In its complaint, South Delta requests:

A declaration of the rights of Plaintiffs and of the obligations and duties of the Defendants with reference to the effects upon the in-channel water supply in the southern Sacramento-San Joaquin Delta of the operations of the Federal Central Valley Project and the State Water Project and to enjoin and restrain the Defendants from operating their respective projects in a manner which is unlawful and which violates the rights of Plaintiffs.

542

*Brown v. GSA*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976)). The Court observed that if adverse claimants were permitted to pursue more general remedies, they would circumvent the special features that Congress included in the Quiet Title Act after extensive negotiation and careful planning: an Indian lands exception, an option given the United States to pay damages, and a twelve year statute of limitations.[16] *Id.* Therefore, the Court remanded for a determination of the date on which the plaintiffs' claim accrued, holding that if plaintiffs filed their suit after the twelve year statute of limitations, the district court had no jurisdiction to hear it. *Id.* at 292–93, 103 S.Ct. at 1822–23.

The federal defendants in the instant case argue that the requirement of a general stream adjudication in the McCarran Amendment, like the twelve year statute of limitations in the Quiet Title Act, is a condition that must be met to bring a water rights dispute case against the United States: if that requirement is not met, the district court has no jurisdiction to hear the case.

This argument fails for two reasons.

First, the analogy between the McCarran Amendment and the Quiet Title Act is inapposite. The Quiet Title Act, containing seven sections with special provisions and limitations, is clearly an attempt to address and resolve the entire area of land title

disputes involving the federal government. *See* 28 U.S.C. 2409a(a)-(g). In contrast, the McCarran Amendment, three sections long, is an attempt to address a particular type of water rights dispute, not the entire field of water law litigation involving the federal government.[17] In enacting the McCarran Amendment, Congress recognized the importance of state court water right proceedings to adjudicate all conflicting claims to the use of water from a river system, and the inequity of permitting the United States to claim immunity from these comprehensive state court adjudications. Senator McCarran justified the Amendment as follows:

> Since it is clear that the States have the control of the water within their boundaries, it is essential that each and every owner along a given water course, including the United States, must be amenable to the law of the State, if there is to be a proper administration of the water law as it has developed over the years.

S.Rep. No. 755, 82d Cong., 1st Sess. 6 (1951).

The McCarran Amendment was thus a response to particular state court water rights suits, i.e., general stream of adjudications, not an attempt to resolve the whole field of water rights litigation. The Amendment does not contain the detailed

---

**16.** For the same reasons, the Court held that the general waiver of sovereign immunity in the APA was inapplicable, finding that the Quiet Title Act was another statute that granted consent to suit but forbade the relief which was sought. 461 U.S. at 286 n. 22, 103 S.Ct. at 1819 n. 22; *see* 5 U.S.C. § 702.

**17.** The McCarran Amendment provides in its entirety:

(a) Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead

that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: *Provided,* That no judgment for costs shall be entered against the United States in any such suit.

(b) Summons or other process in any such suit shall be served upon the Attorney General or his designated representative.

(c) Nothing in this section shall be construed as authorizing the joinder of the United States in any suit or controversy in the Supreme Court of the United States involving the right of States to the use of the water of any interstate stream.

43 U.S.C. § 666 (1982).

exceptions and qualifications that the Quiet Title Act contains. Nor does the Amendment have the "balance, completeness, and structural integrity" of the Quiet Title Act. *See Block*, 461 U.S. at 285, 103 S.Ct. at 1818. Therefore, unlike the Quiet Title Act, the McCarran Amendment does not preclude district court jurisdiction under section 1331.

Second, the Supreme Court and this court have held that the McCarran Amendment does not preclude review under other general jurisdiction statutes, such as 28 U.S.C. §§ 1345 & 1362 (1982).

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Government instituted suit in the district court seeking a declaration of the Government's water rights in certain rivers in Colorado. The Government invoked the court's jurisdiction under 28 U.S.C. § 1345, which grants the district courts original jurisdiction of all suits commenced by the United States "[e]xcept as otherwise provided by Act of Congress." [18] The Supreme Court granted certiorari to "examine whether the McCarran Amendment is such an Act of Congress excepting jurisdiction under § 1345." 424 U.S. at 807, 96 S.Ct. at 1241. After examining the McCarran Amendment's language and legislative history, the Court concluded that "the McCarran Amendment in no way diminished federal-district-court jurisdiction under § 1345 and that the District Court had jurisdiction to hear this case." *Id.* at 809, 96 S.Ct. at 1242. In a footnote, the Court noted that "[t]he District Court also would have had

jurisdiction of this suit under the general federal-question jurisdiction of 28 U.S.C. § 1331. For the same reasons, the McCarran Amendment did not affect jurisdiction under § 1331 either." *Id.* at 809 n. 15, 96 S.Ct. at 1242 n. 15.[19]

The Court reaffirmed its conclusion that the McCarran Amendment does not diminish federal court jurisdiction in *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983). In *San Carlos Apache Tribe*, the Court held that the McCarran Amendment did not limit the jurisdictional reach of 28 U.S.C. § 1362, which grants the district courts original jurisdiction of civil actions brought by Indian tribes.[20] *Id.* at 559–60 n. 10, 103 S.Ct. at 3209–10 n. 10.

And we have recently followed *Colorado River* and *San Carlos Apache Tribe* in holding that the district court has jurisdiction under 28 U.S.C. § 1345 over the Government's suit for a declaration of water rights within a former Indian Reservation. *United States v. Adair*, 723 F.2d 1394, 1400 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984).

Although no court has yet resolved the precise issue whether the McCarran Amendment precludes district court jurisdiction under section 1331, the Supreme Court's holdings in *Colorado River* and *San Carlos Apache Tribe* and its remarks concerning the Amendment's effect on section 1331 in *Colorado River* solidly support the district court's jurisdiction over South Delta's suit under section 1331.

---

**18.** Section 1345 of Title 28 provides:

Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

28 U.S.C. § 1345 (1982).

**19.** Because the *Colorado River* Court held that the district court properly exercised jurisdiction under § 1345, the Court's comments concerning jurisdiction under § 1331 are dicta. Nevertheless, the Court's conclusion that the legislative history of the McCarran Amendment does not indicate an intent to diminish federal-district

court jurisdiction under section 1345 applies with equal force to the Amendment's effect on section 1331 jurisdiction. *See* 424 U.S. at 807–09, 96 S.Ct. at 1241–42.

**20.** Section 1362 of Title 28 provides:

The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1362 (1982).

**544**

## CONCLUSION

For the reasons discussed above, we hold that the United States waived sovereign immunity and that the district court properly exercised its jurisdiction in the instant case. We therefore AFFIRM the district court's denial of the defendants' motion to dismiss.