**Fred and Marian HOLLY, et al., Plaintiffs,**

**v.**

**CONFEDERATED TRIBES AND BANDS OF the YAKIMA INDIAN NATION, an Indian Nation or Tribe established by Treaty with the United States, et al., Defendants.**

**No. C–78–002–JLQ.**

United States District Court, E.D. Washington.

Sept. 6, 1985.

Donald H. Bond, Halverson & Applegate, Yakima, Wash., for plaintiffs.

James B. Hovis, Hovis, Cockrill, Weaver & Bjur, Yakima, Wash., for defendants.

Charles B. Roe, Jr., Sr. Asst. Atty. Gen., Olympia, Wash., for State of Wash.

## MEMORANDUM AND ORDER GRANTING STATE'S MOTION FOR SUMMARY JUDGMENT

QUACKENBUSH, District Judge.

The procedural background for this water rights action and undisputed facts are set forth in the court's earlier memorandum and will not be repeated. See Ct.Rec. 134. Summarized in that document also is a preliminary discussion of the issues raised by this litigation. This memorandum serves only to memorialize the court's oral ruling of July 11, 1985, that the Con-

federated Tribes and Bands of the Yakima Indian Nation (Yakima Nation), do not have inherent power to regulate or administer non-Indian excess waters flowing through the Reservation.

By its motion, the state seeks a declaration that the Yakima Nation Water Code (the Code) adopted by the Tribal Council in May, 1977, is invalid. Two years ago, this court so concluded by reason of the penal provisions of the Code which could have been applied in Tribal Courts against non-Indians. On review, the Ninth Circuit affirmed in part, 749 F.2d 37. However, the Circuit, by memorandum, determined the unlawful penal provision did not invalidate the Code in its entirety. Accordingly, the matter was remanded.

■ Meriting mention is the Yakima Nation's recent contention that the issues before the court are moot because the Yakima Nation has stayed enforcement of the Code and plans to change the promulgation in some respects. Yet, the Code remains in existence, and the claim nonetheless satisfies the elements of the "capable of repetition, yet evading review" exception to the mootness doctrine. *Wiggins v. Rushen,* 760 F.2d 1009 (9th. Cir.1985) citing *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). That is, the parties may "reasonably" expect to be subjected to the Code at a later date. More significantly, however, the Ninth Circuit, by mandate, has directed the court to address the question of Code validity. Similarly, the Tribe's "exhaustion" contention was decided by the Circuit adversely to the Tribe. As such, that ruling also remains the law of the case.

Preliminarily, it is noted that when the United States sets aside a reservation of land, it impliedly reserves water then unappropriated in sufficient quantity to accomplish the purposes of the federal reservation. *United States v. New Mexico,* 438 U.S. 696, 698–700, 98 S.Ct. 3012, 3013–14, 57 L.Ed.2d 1052 (1978). Hence, Indian tribes hold reserved water rights. *Winters v. United States,* 207 U.S. 564, 577, 28 S.Ct. 207, 211–12, 52 L.Ed. 340 (1908). Unlike appropriative rights created under state law, which are defined by actual diversion and continued beneficial use of waters from natural channels, Indian *Winters* rights reserve a paramount right to the use of as much water which is in contact with the reservation as is needed to fulfill the primary purposes for which the land was reserved. *Colville Confederated Tribes v. Walton,* 647 F.2d 42 (9th Cir.1981), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 630 (1981) (*Walton* II). "Excess" waters are those stream waters, to be distinguished from ground water, which are over and above those used to satisfy *Winters* rights. 647 F.2d at 47.

The Code in question is comprehensive, purporting to regulate all waters underlying, arising upon or flowing through or along the border of the Reservation. To determine whether the Yakima Nation's sovereign power is sufficient to apply its Code to non-members of the Tribe using excess waters on fee lands requires analysis under *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). While Indian tribes possess inherent sovereign power over their members and their territory, 450 U.S. at 563, 101 S.Ct. at 1257, due to their "original incorporation into the United States," exercise of tribal power beyond that necessary to protect tribal self-government is deemed inconsistent with its "dependent status". 450 U.S. at 564–65, 101 S.Ct. at 1257–58. Therefore, such inherent power was held not to survive without express congressional delegation. 450 U.S. at 564–65, 101 S.Ct. at 1257–58. Because tribes may not exercise power inconsistent with this diminished sovereign status, Indians have lost the right to govern nonmembers residing within Reservations except in certain instances. 450 U.S. at 565, 101 S.Ct. at 1258. One exception exists where nonmembers enter into consensual relationships with a tribe or its members. 450 U.S. at 565, 101 S.Ct. at 1258. More importantly in this case, a tribe also retains inherent power to civilly regulate the conduct of non-Indians on fee lands "when that conduct threatens or has some direct effect on the political integrity, the econom-

ic security, or the health or welfare of the tribe." 450 U.S. at 566, 101 S.Ct. at 1258.[1]

Significantly, in a case arising in this district, the reviewing court held that conduct threatening the health or welfare of an Indian tribe may include conduct involving the tribe's water rights. *Walton* II, 647 F.2d at 52. In *Walton,* a non-Indian's water appropriation imperiled the Colville Confederated Tribes' downstream use of agricultural and fisheries water. On the other hand, a contrary conclusion was reached, under different circumstances, in a later action also initiated in this district. See, generally, *United States v. Anderson,* 736 F.2d 1358, 1365 (9th Cir.1984) (political and economic welfare of the Spokane Tribe unaffected by the conduct of nonmembers using excess water on fee land).

■ Here, for purposes of this motion, it is undisputed that surplus waters exist and are used by non-Indians on Reservation fee land and off the Reservation.[2] As the facts demonstrate, the state has met its burden of demonstrating a peaceful co-existence of the non-Indian water users with the Tribes. The defendants have not come forward with facts to show existence of a material factual question with respect to whether non-Indian conduct related to non-Indian use of excess waters threatens the political integrity, economic security, or health and welfare of the Tribes. Nor have the non-Indians entered into agreements or dealings with the Tribes with a result of subjecting themselves to tribal

civil jurisdiction. Consequently, the inescapable conclusion is the Yakima Nation has not retained the power to regulate excess water use by non-members on their fee land within or without the Reservation. It follows, then, that the Code is invalid to the extent it purports to bestow upon the Yakima Nation civil regulatory jurisdiction over non-Indian use of surplus waters. Thus, to the extent defendants seek to administer, regulate, and adjudicate non-Indian use of surplus water, under the power of the Code, defendants are proceeding without authority and are not insulated from suit. *Holly v. City of Toppenish,* 749 F.2d 37, Unpublished Memorandum (9th Cir.1984); Ct.Rec. 55 at 2 and 134 at 2.

In so concluding, this court has not been asked to determine which sovereign, federal or state, should regulate excess waters. Such a consideration is outside the scope of this action, as it would require a pre-emption analysis informed by detailed factual development with the participation of the United States as a party. See *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 145, 100 S.Ct. 2578, 2584, 65 L.Ed.2d 665 (1980). (Analysis of whether a state may regulate non-Indian conduct on a Reservation requires "a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context the exercise of state authority would violate federal law.")[3] See, also,

---

**1.** This retained civil authority over non-Indians is not only a self-government notion, but also derives from the power to exclude nonmembers from tribal land. *United States v. Anderson,* 736 F.2d 1358, 1364 (9th Cir.1984).

**2.** Although the existence of excess waters is stipulated, Ct.Rec. 134 at 8, such waters have only been partly quantified. That is, in the Glenwood Area a general adjudication (quantification) occurred in *In the Matter of the Determination of the Rights to the Use of Bird & Braser Creeks. State v. Bartholomew, et al.,* Klickitat County Washington Superior Court Decree entered March 14, 1921. See Stipulated Fact 8, Ct.Rec. 134 at 6. The various remaining water systems, which serve users within and without the Reservation, are currently undergoing general adjudication in *State v. Aquavella,* Yakima County Superior Court Cause No. 77–2–01484–5 (Stauffacher J.).

For purposes of this motion, the court considers the Glenwood area as within the Reservation boundaries.

**3.** After concluding, under a *Montana* analysis, that the economic welfare of the Colvilles was threatened by Non-Indian use of the unitary water system in *Walton* II, the panel went on to additionally hold, under a pre-emption mode, that the state could not regulate water in that system. 647 F.2d at 52. Factually, this was so because the stream was small, non-navigable, and flowed entirely within the Reservation. 647 F.2d at 53. Although some land served by the unitary, adjudicated stream system was in non-Indian ownership, it was also within Reservation boundaries. Finally, the non-Indian lands were purchased allotted lands rather than public domain lands. 647 F.2d at 53 & n. 16. Under its narrow ruling, the court found it unnecessary *to decide whether the regulatory*

**560**

Ct.Rec. 134 at 20. Nor does the court decide the extent to which the Yakima Nation may regulate reserved waters and/or ground waters with or without the concurrence of the United States.

Lastly, the court is mindful of the Circuit's recent teachings in *South Delta Water Agency v. United States*, 767 F.2d 531 (9th Cir.1985), decided after this court's oral ruling in the instant case. In *South Delta*, an action not directly involving Indian water rights, public and private water use holders brought a declaratory action against the federal and California governments alleging defendants were operating their facilities in a manner which violated plaintiffs' federal and state law rights. Logically, opined the reviewing court, where "there has been no prior adjudication of relative stream water rights," a court cannot adjudicate the administration of those rights within the meaning of the McCarran Amendment (43 U.S.C. § 666(a)(2)). *South Delta*, at 541. However, in so concluding, the appellate court nonetheless found trial court jurisdiction to hear the matter against the United States, because the McCarran Amendment was not meant to address "the entire field of water law litigation involving the federal government." *South Delta* at 542. More importantly here, the Circuit has already resolved the threshold jurisdictional issue by mandating this court address the water rights administration question, in this case, Code validity.

IT IS ORDERED the state's Motion for Summary Judgment, joined by the municipal and individual plaintiffs, is GRANTED. The Clerk of the Court is directed to enter judgment that the Yakima Nation Water Code, adopted in May, 1977, is invalid as to non-member use of excess waters on or passing through the Yakima Indian Reservation.

power resided exclusively in the Tribe, in the federal government, or whether it was to be exercised jointly. 647 F.2d at 52. It simply concluded the state could not regulate because tribal and/or federal control did not impact off-reservation state water rights. 647 F.2d at 53.

In *Anderson*, 736 F.2d at 1365–66, the state was not pre-empted from exercising its regulatory jurisdiction over the use of surplus, non-reserved waters by non-members on non-fee lands within the Spokane Reservation. The "particularized inquiry", *Bracker*, 448 U.S. at 145, 100 S.Ct. at 2584, of the state's interest, in the context of an adjudicated stream system which continued for a considerable length outside the reservation weighed heavily against the competing federal and tribal interests. 736 F.2d at 1366. As discussed in this court's earlier Order, Ct.Rec. 134 at 15–17, the state, tribal and federal interests in this case are unlike the factual underpinnings of *Walton* II or *Anderson*.