**LAUGHLIN RIVER TOURS, INC.; Talley, John T., an individual, Plaintiffs,**

**v.**

**BUREAU OF RECLAMATION; DEPARTMENT OF INTERIOR; UNITED STATES of America; Doe Governmental Agencies I–V, Defendants.**

**No. CV–S–87–823–HDM.**

United States District Court,
D. Nevada.

Jan. 8, 1990.

Ronald R. Madson, Simmons, Madson & Snyder, Las Vegas, Nev., for plaintiffs.

Ruth Cohen, Asst. U.S. Atty., Las Vegas, Nev., Robert Moeller, Office of the Solicitor, Barbara Markham, Chief Counsel, Phoenix, Ariz., Douglas Noble and Pamela Cvitan, Deputy Attys. Gen., Los Angeles, Cal., Gerald A. Lopez, Deputy Atty. Gen., Las Vegas, Nev., James P. Bartlett, Phoenix, Ariz., Edward C. Farrell, Chief Asst. City Atty. for Los Angeles, Los Angeles, Cal., Northcutt Ely, Redlands, Cal., Warren J. Abbott, Karne L. Tachiki, James F. Roberts, General Counsel, Metropolitan Water Dist. of S. Cal., Los Angeles, Cal., Anthony Ching, Office of the Atty. Gen., Ralph Hunsaker, O'Connor, Cavanagh, Anderson, Westover, Killingsworth, Douglas Miller, Phoenix, Ariz., for defendants.

## DECISION

McKIBBEN, District Judge.

This action was commenced by Laughlin River Tours, Inc. ("Laughlin") against the Bureau of Reclamation, United States Department of Interior ("Bureau"). Laughlin Tours seeks a mandatory injunction compelling the defendants to release sufficient waters, if available, from the dams along the Colorado River to make the Colorado River navigable. The original motions in this action requested injunctive relief requiring the Bureau to release a minimum of ten thousand (10,000) cubic feet per second ("cfs") of water to ensure that the "waters can be navigable in fact."

On November 6, 1987, the court rejected Laughlin's application for a temporary restraining order, and a hearing on the application for a preliminary injunction was con-

ducted on November 18, 1987. At that hearing, the court granted the motions of the defendants, Department of Water and Power of the City of Los Angeles, the State of Arizona and its Arizona Power Authority, the Department of Water Resources, Central Arizona Water Conservation District, the State of California, and the Metropolitan Water District of Southern California, to intervene.

The court denied Laughlin's motion for a preliminary injunction and ordered Laughlin to exhaust administrative remedies by applying to the Regional Director, Lower Colorado River, Bureau of Reclamation, for an administrative determination in connection with the relief sought in this litigation. Laughlin then proceeded with a request for an administrative determination by submitting a letter to the Regional Director of the Bureau of Reclamation requesting that between the hours of 5:00 a.m. and 10:00 p.m. Sunday through Friday, the Bureau release ten thousand (10,000) cfs, and between the hours of 5:00 a.m. and 12:00 midnight on Saturday, the Bureau release a minimum of ten thousand (10,000) cfs. Specifically, Laughlin contended that amounts of 2,500 to 5,000 cfs are released in the evening hours in order to accommodate the release of greater amounts during peak power demands in the afternoons. Laughlin also complained of the wild fluctuations in the releases and renewed its request for a constant release of 10 cfs. On September 19, 1988, the administrative decision of the Regional Director, Lower Colorado Regional Bureau of Reclamation, United States Department of Interior, was rendered, denying the application. The Regional Director concluded that "releasing water to raise the depth of the river as a method of improving navigation at one specific point on the river is not required by the Boulder Canyon Project Act and makes no sense in the arid West where water is probably the most precious of natural resources." (Page 28 of the administrative decision). Thereafter, Laughlin appealed the decision to the Commissioner of the Bureau of Reclamation, United States Department of Interior. That appeal was denied, and Laughlin then reapplied to this court to review the administrative determination and to issue the requested injunctive relief. In this appeal, Laughlin has modified the request slightly by asserting entitlement to 7500 cfs and requesting a finding by this court that minimum releases of 2500 cfs are too little for navigation.

The court has considered the administrative record, together with the supplemental administrative record and concludes the decision of the Bureau of Reclamation denying the application of Laughlin River Tours was not arbitrary and capricious or contrary to law.

## A. STANDARD OF REVIEW

The Administrative Procedure Act, 5 U.S.C. §§ 701–06 (1982) ("APA"), applies. *South Delta Water Agency v. United States,* 767 F.2d 531, 536 (9th Cir.1985) (section 702 of the APA held to apply to the Bureau of Reclamation); *Consumer Fed'n of Am. v. FTC,* 515 F.2d 367 (D.C.Cir.1975) (APA applies unless statutory prohibition of judicial review or agency action is committed to agency discretion).

A reviewing court must set aside any agency action which the court finds or concludes is arbitrary, capricious, or an abuse of discretion, or otherwise is not in accordance with the law. 5 U.S.C. § 706. The court must review the whole record and take notice of the rule of prejudicial error. *Id.* The court must further determine whether the decision was based on a consideration of the relevant factors and whether there was "a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971).

■ The central focus of this litigation is whether the provisions of section 6 of the Boulder Canyon Project Act of 1928 require the Bureau to redetermine its legal responsibility to release sufficient amounts of water from Hoover and Davis Dams to meet the specific navigational requirements of the plaintiff. Section 6 of the Boulder Canyon Project Act of 1928 provides in pertinent part as follows:

The dam and reservoir provided for by section 1 hereof shall be used: First, for

river regulation, improvement of navigation, and flood control; second, for irrigation and domestic uses and satisfaction of present perfected rights in pursuance of Article VIII of said Colorado River compact; and third, for power.

45 Stat. 1057, 1061 (1928) (codified as amended at 43 U.S.C. §§ 617–619b (1982)).

Under the express provisions of the Act, controlling floods, improving navigation, and regulating the flow are the first priorities. The generation of energy as a means of financial support for the project is a lower priority. *United States v. Arizona,* 295 U.S. 174, 180, 55 S.Ct. 666, 667, 79 L.Ed. 1371 (1935) (Compact authorizes waters in system to be used for domestic, agricultural, and power purposes, but generation of power to be subservient to uses for domestic and agricultural purposes); *Arizona v. California,* 283 U.S. 423, 456, 51 S.Ct. 522, 526, 75 L.Ed. 1154 (1931) (clear statutory pronouncement of purposes of the Act, making improvement of navigation first and power third, is controlling over the Colorado River compact, which makes the improvement of navigation subservient to all other purposes); 43 U.S.C. § 617e, 617g, (the United States in operating the dam and reservoir shall be subject to the terms of the Colorado River compact).

Clearly, the Bureau is required to improve navigation. It is one of the main purposes for which the dam and the reservoir were constructed. The generation of power, which is to be used to make the project financially stable, is the third priority. If the Bureau is placing the generation of power as a priority over the improvement of navigation, it is not acting in accordance with the law. However, the record does not support such a conclusion. A large part of the river south of Black Canyon was formerly navigable. *Arizona v. California,* 283 U.S. at 453, 51 S.Ct. at 525. The main obstacles to the navigation were the accumulation of silt and the irregularity of the flow due to periods of low water. *Id.* Congress intended that the Boulder Canyon project dam should arrest the silt. *Id.* at 454, 51 S.Ct. at 525. Through the stored waters in the reservoir

the irregularity in the flow was largely overcome, thereby ensuring that navigation for considerable distances, both above and below the dam, would be feasible. *See id.* "The House Committee on Irrigation and Reclamation stated that one of the purposes of the Act was to have the flow of the river below the dam 'regulated and even' and thus 'susceptible to use by power boats and other small craft. The great reservoir will, of course, be susceptible of navigation.'" *Id.* at 454 n. 5, 51 S.Ct. at 526 n. 5.

■ However, the court concludes the Bureau does not misconstrue the provisions of the Act when it does not read these priorities as requiring the Secretary to maximize the first set of purposes before establishing criteria to meet the second and third priorities. In short, each of the priorities is interdependent on the others, and the Secretary has broad discretion in meeting the needs of the second and third priorities as long as the Secretary continues to use the dam to improve navigation and does not place an undue burden on navigation along the river. The record does reflect that the Bureau has not been totally successful at making the river navigable at all times and at all locations and for the needs of every user. However, this does not necessarily lead to the conclusion that the Secretary has failed to fulfill the purposes of the Act. A river remains navigable even though there are occasional obstructions and interruptions, and the navigability of the river need not be continuous. *See United States v. Appalachian Elec. Power Co.,* 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940); *Arizona v. California,* 283 U.S. at 454 (1931).

The record in this case amply supports the findings that the Secretary has properly balanced the interests and factors necessary to meet the several purposes of the Act. The administrative record reflects that the primary obstacle to navigation is silt accumulation and the irregularity in the flow. The Bureau has made substantial efforts to improve navigation. (A.R. Item 5, pp. 170–173.) First, the building of the dam itself improved on the accumulation of silt. In addition, the Bureau has engaged in dredging of the channels. The Bureau

has stabilized banks, removed snags, constructed levees and dikes, and reconstructed channels. The fact that the Bureau may have elected to improve navigation in this manner rather than by releasing a constant flow of water is not an impediment to the validity of its activities in attempting to fulfill the mandates of the statute. The record further amply supports the finding that the river is navigable to pleasure boaters.

Additionally, Laughlin River's boats have been able to navigate without obstruction for a number of years following the high water tables of 1983 and 1984. During that period, releases for flood control permitted full twenty-four (24) hour navigation for boats the size of Plaintiffs'. As the court has previously observed, navigability is not destroyed because the river is not open all year or at all levels of water. *Loving v. Alexander*, 745 F.2d 861 (4th Cir.1984). The Bureau provides substantial support for its contention that it has achieved an improvement of navigation.

Therefore, on the basis of the record, the court concludes that Laughlin River Tours has failed to establish that the Bureau has failed to comply with section 6 of the Boulder Canyon Project Act. The construction of Hoover, Davis, and Parker Dams substantially improved navigation throughout the course of the lower Colorado River as is reflected in the extensive historical analysis of navigation on the lower Colorado River set forth in the administrative decision. Subsequent to the construction of these dams, the river channel has been stabilized, and the silting has been substantially reduced. The varying swings in seasonal flows on the river have been evened out and, as a consequence, it is clear that the channel is navigable over many more miles and for longer periods than during the period preceding the construction of the dams. The court does not find, as urged by the plaintiffs, that the release of water to raise the depth of the river at one specific point in the river in order to improve navigation is required by the Boulder Canyon Project Act. Had the record reflected that during substantial periods, and in a substantial number of areas, no navigation was possible on the lower Colorado River, the conclusion may have been different. Such is not the case, however. The record simply does not support the plaintiffs' contention that the river has been made nonnavigable by the practices of the Bureau of Reclamation.

Therefore, for the reasons hereinabove set forth, and for the reasons previously set forth by the court in denying Plaintiffs' application for a preliminary injunction,

It is ORDERED that Laughlin River Tours' application for a permanent injunction is DENIED.